IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>FISKER AUTOMOTIVE HOLDINGS, INC., et al.,<br><br>        Debtors | CHAPTER 11<br><br>C.A. NO. 13-13087-KG<br><br>(Jointly Administered) |
| HYBRID TECH HOLDINGS, LLC,<br><br>        Appellant,<br><br>v.<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FISKER AUTOMOTIVE HOLDINGS, INC. AND FISKER AUTOMOTIVE, INC.,<br><br>        Appellee. | C.A. NO. 14-CV-99 (GMS) |

## MEMORANDUM

### I. INTRODUCTION

Presently before the court is Hybrid Tech Holdings, LLC's ("Hybrid") Emergency Motion for Leave to Appeal Decision Limiting Credit Bid. (D.I. 1.) For the reasons that follow, the court will deny Hybrid's motion.

### II. BACKGROUND

At a public auction on October 11, 2013, Hybrid acquired the Department of Energy's ("DOE") $168 million interest in a secured loan previously extended by the Federal Financing Bank ("FFB") to Fisker Automotive Holdings, Inc. ("the Debtors"). (D.I. 1 at 1-2.) Hybrid won the auction with a bid of $25 million, (D.I. 2 at 3), and assumed the DOE's position as the Debtors'

senior secured lender, (C.A. 13-13087-KG, D.I. 483[1] at 4). Having acquired the loan from the DOE, Hybrid entered into an Asset Purchase Agreement ("the Purchase Agreement") with the Debtors under which Hybrid was to acquire the Debtors' assets through a $75 million credit bid of the DOE loan. (D.I. 1 at 2, 7; C.A. 13-13087-KG, D.I. 483 at 4.) The Debtors filed the bankruptcy cases to accomplish the sale of substantially all of their assets to Hybrid and then to administer the chapter 11 estates through the Debtors' proposed chapter 11 plan of liquidation. (C.A. 13-13087-KG, D.I. 483 at 2.)

In December 2013, the Official Committee of Unsecured Creditors ("the Committee") was appointed. (D.I. 1 at 7.) The Debtors sought authorization from the Bankruptcy Court to consummate the sale to Hybrid, but the Committee opposed Hybrid's right to credit bid and proposed an auction instead. (D.I. 2 at 5-6; C.A. 13-13087-KG, D.I. 483 at 4.) Specifically, the Committee proposed an auction with Wanxiang America Corporation ("Wanxiang"), whose proposal was "extremely attractive both economically and in its significant non-economic terms." (C.A. 13-13087-KG, D.I. 483 at 5.) Wanxiang made it clear that if Hybrid was entitled to credit bid more than $25 million at the auction, Wanxiang would not participate in the auction. (*Id.* at 7.) In effect, there would not be an auction. (*Id.*) On January 10, 2014, the Bankruptcy Court held a hearing to consider whether the Debtors' assets should be sold through an auction, whether Hybrid was entitled to credit bid its claim, and whether Hybrid's credit bid should be capped at at the $25 million with which Hybrid won the DOE auction. (D.I. 1 at 9; C.A. 13-13087-KG, D.I. 483 at 7.) At the conclusion of the hearing, the Bankruptcy Court ruled from the bench that the

---

[1] Bankruptcy Court's memorandum opinion dated January 17, 2014 regarding the Motion of the Debtors for the Entry of An Order Authorizing the Sale of Substantially All of the Debtors' Assets, (C.A. 13-13087-KG, D.I. 13), and the Motion of the Creditors' Committee for Entry of An Order Approving Bid Procedures in Connection with the Sale of Certain Assets of the Debtors, (C.A. 13-13087-KG, D.I. 265).

2

Debtors' assets should be auctioned and that any credit bid by Hybrid should be capped at $25 million. (D.I. 2 at 9.)

On January 14, 2014, Hybrid filed a Notice of Appeal, among other things. (*Id.* at 9-10.) On January 17, 2014, the Bankruptcy Court heard oral argument on Hybrid's motion. (*Id.*) After the hearing, the Bankruptcy Court entered a written order again capping at $25 million Hybrid's ability to credit bid at any auction for the Debtors' assets. (*Id.* at 10.) While acknowledging that "[i]t is beyond peradventure that a secured creditor is entitled to credit bid" under 11 U.S.C. § 363(k), the Bankruptcy Court based its ruling on the fact that "[t]he law is equally clear, as Section 363(k) provides, that the Court may 'for cause order[] otherwise.'" (*Id.* at 8.) The Bankruptcy Court concluded for a few reasons detailed in its order that there was cause to cap at $25 million Hybrid's ability to credit bid. First, the Bankruptcy Court cited the certainty that Wanxiang would otherwise withdraw its attractive proposal and refuse to participate in an auction. (*Id.* at 9 ("The evidence in this case is express and unrebutted that there will be no bidding – not just the chilling of bidding – if the Court does not limit the credit bid.") (Emphasis in original).) Second, the Bankruptcy Court expressed concern regarding the consequences for other would-be bidders of Hybrid's rush to purchase all of the Debtors' assets, explaining that "Hybrid, if unchecked of its purchase, might well have frozen out other suitors for Fisker's assets."[2] (*Id.* at 10.) Third, the Bankruptcy Court explained that "Hybrid's claim is partially secured, partially unsecured, and of

---

[2] In particular, the Bankruptcy Court noted: "Debtors filed these cases on Friday, November 22, 2013, a mere three business days before the Thanksgiving holiday, and insisted that the Sale motion and confirmation hearings occur not later than January 3, 2014, i.e., immediately after the New Year holiday. The schedule therefore allowed only 24 business days for parties to challenge the Sale Motion and even less time for the Committee, which was not appointed until December 5, 2013, to represent the interests of unsecured Creditors....It is the Court's view that Hybrid's rush to purchase and to persist in such effort is inconsistent with the notions of fairness in the bankruptcy process. The Fisker failure has damaged too many people, companies and taxpayers to permit Hybrid to short-circuit the bankruptcy process." (C.A. 13-13087-KG, D.I. 483 at 10.)

3

uncertain status for the remainder....[and] [t]he law leaves no doubt that the holder of a lien the validity of which has not yet been determined, as here, may not bid its lien." (*Id.* at 10-11.)

In addition to differing in their assessments of the Bankruptcy Court's correctness in capping Hybrid's credit bid, Hybrid and the Committee also differ regarding whether the order of the Bankruptcy Court constitutes a final order appealable as of right pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8001(a). Hybrid argues that the Bankruptcy Court's decision regarding the credit bid is a final order and that even if its appeal is interlocutory, the factors to be considered weigh in favor of its appeal being heard. (D.I. 1 at 1, 11.) The Committee argues, on the other hand, that the decision is not final for the purposes of appeal and that Hybrid "has failed to establish any of the elements necessary to justify this early appeal of a non-final decision." (D.I. 2 at 1.)

## III. LEGAL STANDARD

### A. Final Bankruptcy Court Orders

28 U.S.C. § 158(a)(1) provides that "a district court for the judicial district in which the bankruptcy judge is serving" has mandatory jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy judge. Although Section 158(a)(1) does not discuss what constitutes finality, Third Circuit precedent establishes some basic precepts. Some of the factors that the Third Circuit has considered in determining whether a Bankruptcy Court's decision is final include: "(1) 'the impact of the matter on the assets of the bankruptcy estate,' (2) 'the preclusive effect of a decision on the merits,' and (3) 'whether the interests of judicial economy will be furthered.'" *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314 (3d Cir. 2011) (quoting *In re F/S Airlease II, Inc.*, 844 F.2d 99, 104 (3d Cir. 1988)). Additionally, district courts should be pragmatic in their interpretation of finality in bankruptcy cases because of the protracted nature of the proceedings and the numerous parties with different claims often involved. *See, e.g., F/S Airlease*

4

*II*, 844 F.2d at 104; *In re Natale*, 295 F.3d 375, 378 (3d Cir. 2002); *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988). Despite this more "relaxed view of finality", however, "the general antipathy toward piecemeal appeals still prevails in individual adversary actions…[and] inefficient use of judicial resources is as objectionable in bankruptcy appeals as in other fields." *Natale*, 295 F.3d at 379. It is well established that "an order in an individual adversary proceeding is not final unless it 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996) (Internal quotation and citation omitted). Accordingly, "even in bankruptcy appeals the concept of finality is not open-ended. Orders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation." *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (quoting *United States v. Nicolet, Inc.*, 857 F.2d 202, 206-07 (3d Cir. 1988)); *see also In re Semcrude, LP*, Civ. No. 10-447-SLR, 2010 U.S. Dist. LEXIS 136391, *10 (D. Del. Oct. 26, 2010) (concluding that the bankruptcy court's order was not final).

### B. Interlocutory Orders

Where appeals are sought from bankruptcy judges' "interlocutory orders and decrees", it is entirely at district courts' discretion to grant or deny leave to appeal these orders. *See* 28 U.S.C. § 158(a)(3); *In re Bertoli*, 812 F.2d 136, 140 (3d Cir. 1987) (interpreting Section 158(a)(3) as permitting district courts to hear interlocutory appeals at their discretion). Section 158(a)(3) does not expound on how district courts are to decide whether to grant interlocutory appeals, but district courts usually apply the standard provided in 28 U.S.C. § 1292(b). *See, e.g., In re Anderson News, LLC*, Civ. No. 12-87-LPS, 2013 U.S. Dist. LEXIS 174895, *7 (D. Del. Dec. 10, 2013) (explaining that "[t]ypically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals."). Section 1292(b)

5

states that an interlocutory appeal should be heard when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Additionally, the appellant must establish that "exceptional circumstances justify a departure from the basic policy of postponing a review until after the entry of final judgment." *See, e.g., Anderson News*, 2013 U.S. Dist. LEXIS at *8 (citation omitted); *In re Semcrude, LP*, 2010 U.S. Dist. LEXIS 136391 at *10 (citation omitted).

## IV. DISCUSSION

### A. Finality of the Bankruptcy Court's Order

The Court is not persuaded that the Bankruptcy Court's order is a final order appealable as of right. First, Hybrid argues that the Bankruptcy Court's order should be deemed final because whether Hybrid's credit bid is capped will dictate how the sale process proceeds and have a substantial impact on the Debtors' chapter 11 case. (D.I. 8³ at 4.) Hybrid's argument appears overstated, however. As the Committee notes, there are many issues other than Hybrid's credit bid that are as yet unresolved by the Bankruptcy Court's order and will impact the process and results of the sale. For instance, the Bankruptcy Court has yet to fully resolve the nature of Hybrid's statutory rights and whether Hybrid's lien is even valid. (C.A. 13-13087-KG, D.I. 483 at 7.) Furthermore, the Bankruptcy Court's order does not determine how the proceeds of the auction will be distributed, whether Hybrid might ultimately be allocated the full value it seeks, or the portion of the auction proceeds to which Hybrid will be entitled if it is deemed a secured creditor. (D.I. 2 at 12.) The order does not even require an auction and instead, leaves the avenues

---

³ The court consults Hybrid's reply to the Committee's opposition because Hybrid's arguments regarding finality appear for the first time in its reply to the Committee's opposition. (D.I. 8 at 3-7.) In its initial emergency motion, Hybrid made no arguments regarding finality under Section 158(a)(1) and merely stated in a conclusory fashion that "[t]he Credit-Bid decision is a final order from which Hybrid Holdings appeals as of right pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8001(a)." (D.I. 1 at 1.)

that the Debtors can pursue, the most viable of which certainly seems to be a public auction of the sale assets at which Hybrid and other qualified bidders will be able to participate. (*Id.* at 11.) .

Second, Hybrid argues that a remedy (i.e., lifting the cap on Hybrid's ability to credit bid) to the Bankruptcy Court's violation of its statutory right will be possible only before the sale closes and that this fact in itself "undoubtedly renders" the Bankruptcy Court's decision a final order. (D.I. 8 at 4.) The court is not persuaded, however, that that Hybrid will be without a remedy should the auction take place. Hybrid does not dispute the Committee's assertion that the Bankruptcy Court's order is not a final determination of whether Hybrid is entitled to a full credit bid of its loan against all of the assets to be sold. (D.I. 8 at 6.) The Bankruptcy Court could decide after the auction that Hybrid's credit bid should not have been capped. Hybrid has not offered any reason why it could not, as the Committee suggests, (D.I. 2 at 11-12), credit bid up to $25 million at an auction of the sale assets and supplement with cash any additional amount that it seeks to bid at the auction. Hybrid could then either receive a cash return of the difference between a full credit bid and the $25 million cap on its credit bid, were the Bankruptcy Court to conclude it was so entitled, or if a third-party bidder won the auction, Hybrid could receive its entitlement out of the cash paid by this third party. (*Id.*)

Third, Hybrid asserts that its rights have been fully adjudicated by the Bankruptcy Court and "there is no more work to be done by the Bankruptcy Court" regarding Hybrid's right to credit bid its full claim. (D.I. 8 at 6.) As the preceding discussion shows, however, there is much work left for the Bankruptcy Court. As case law establishes, a bankruptcy order that requires further development to fully dispose of the issues is not final. *See, e.g., In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) ("[E]ven in bankruptcy appeals the concept of finality is not open-ended. Orders that do not fully adjudicate a specific adversary proceeding or that require further factual development

7

are governed by the ordinary finality precepts of routine civil litigation.") (quoting *United States v. Nicolet, Inc.*, 857 F.2d 202, 206-07 (3d Cir. 1988)); *In re Semcrude, LP*, 2010 U.S. Dist. LEXIS 136391 at *10 (concluding that appellants "may not appeal as of right in the instant cases because the bankruptcy court's order is not 'final' in light of the foregoing authority. The bankruptcy court's...did not terminate the bankruptcy court litigation on the merits.") Hybrid's reliance on the Southern District of New York's decision in *In re Financial News Network, Inc.* is unavailing. 126 B.R. 152, 155 (SDNY 1991). In that case, the Bankruptcy Court did not merely cap the credit bid; it outright disqualified the bidder with little explanation, despite the fact that the bid apparently met all the conditions required by the Bankruptcy Court. *See id.* at 154-56. No action taken by the Bankruptcy Court in the instant case has been as drastic or as ultimate as that in *Financial News Network*.

### B. Leave to Appeal the Interlocutory Order

Just as the court is not persuaded that the order in question is final for the purposes of Section 158(a)(1), the court is also not convinced that Hybrid has established the factors required to justify an interlocutory appeal under Section 158(a)(3).

#### 1. Controlling Question of Law as to Which There Exist Substantial Grounds for Difference of Opinion

The first factor is that there must be a controlling question of law as to which there exist substantial grounds for difference of opinion. Hybrid argues that this factor is established because "[w]hether Hybrid Holdings can credit bid the full amount of its debt has a dispositive effect on the outcome of the asset sale process, residual distributions to creditors, and the entire contents of any chapter 11 plan confirmed in the Debtors' cases." (D.I. 1 at 11.) The Committee, for its part, argues that there are no substantial grounds for difference of opinion since plain statutory language

8

in the form of 11 U.S.C. § 363(k) and relevant legal precedent were the foundation of the Bankruptcy Court's order. (D.I. 2 at 13-14.) The court concludes that the Committee is correct.

The plain text of Section 363(k) authorizes a Bankruptcy Court to disallow a lien-holder from offsetting its claim against a property's purchase price at a sale. 11 U.S.C. § 363(k) ("At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, *unless the court for cause orders otherwise* the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.") (Emphasis added). In accordance with Section 363(k), courts have recognized that Bankruptcy Courts have this power. *See, e.g., In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 315-316 (3d Cir. 2010) ("As an initial matter, the Code plainly contemplates situations in which estate assets encumbered by liens are sold without affording secured lenders the right to credit bid. The most obvious example arises in the text of § 363(k), under which the right to credit bid is not absolute. A secured lender has the right to credit bid 'unless the court for cause orders otherwise.'). Indeed, the Third Circuit has recognized that one of the reasons for which a Bankruptcy Court may deny a lender the right to credit bid is the exact reason that the Bankruptcy Court in the instant case cited in its order – "to foster a competitive bidding environment." *Id.* at 316, n. 14 ("A court may deny a lender the right to credit bid in the interest of any policy advanced by the Code, such as to ensure the success of the reorganization *or to foster a competitive bidding environment.*) (Emphasis added). The mere fact that, as Hybrid notes, courts "have recognized the importance of the secured creditor's right to credit bid" is not sufficient to establish that substantial grounds for a difference of opinion exist regarding the well-established precepts detailed above. *See, e.g., Anderson News*, 2013 U.S. Dist. LEXIS at *9-10 (concluding that substantial grounds for difference of opinion do not exist where no authority

9

contrary to that supporting the Bankruptcy Court's reading of the statute is cited); *In re Semcrude*, 2010 U.S. Dist. LEXIS at *13 ("The difference of opinion must arise out of genuine doubt as to the correct legal standard.") (Citations omitted).

### 2. An Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation

The second factor that the court must weigh in deciding whether to grant leave to bring an interlocutory appeal under Section 158(a)(3) is whether an immediate appeal may materially advance the ultimate termination of the litigation. Hybrid argues that this factor is established because resolving whether the Bankruptcy Court properly interpreted Section 363(k) in capping Hybrid's credit bid "is a gating issue to the advancement of the sale and plan process, and ultimately, the fate of the Debtors' chapter 11 case." (D.I. 1 at 13.) The court is unconvinced by Hybrid's contention.

There is no evidence at all that whether Hybrid's credit bid should be capped is an issue that must be resolved in order for the sale of the Debtors' assets to proceed. Indeed, as discussed above in the context of the finality of the Bankruptcy Court's order, there is no reason why the auction contemplated by the Committee and the Bankruptcy Court cannot proceed with Hybrid bidding alongside other parties and Hybrid receiving a cash adjustment should the Bankruptcy Court ultimately decide Hybrid's credit bid should not have been capped. The fact that Hybrid can be reimbursed out of the proceeds of the auction should the Bankruptcy Court ultimately decide that Hybrid's credit bid should not have been capped weighs against permitting the interlocutory appeal. *See Newton v. Merrill Lynch, Piere, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001) ("[I]f allowing the litigation to follow its natural course would provide the moving party with an adequate remedy, interlocutory review will generally prove unnecessary.") Furthermore, the sale of the Debtors' assets is just one of the issues to be resolved in these cases.

As the Committee points out and Hybrid does not deny, the Bankruptcy Court's decision to cap Hybrid's credit bid is "merely one procedural step in the complex, multi-step process in achieving a final disposition of these cases." (D.I. 2 at 18.) Interfering with the Bankruptcy Court's decision-making at this early stage is more likely to impede, rather than hasten, resolution of the cases by delaying, for instance, the Bankruptcy Court's ability to resolve the issues remaining. *See, e.g., Semcrude*, 2010 U.S. Dist. LEXIS 136391 at *16 (citing the delay inherent in briefing and arguing appeals and the fact that appellants would still have to proceed in multiple suits in concluding that an interlocutory appeal was not appropriate).

### 3. Exceptional Circumstances

Hybrid has not articulated any exceptional circumstances that warrant granting it leave to appeal the interlocutory order in question here. (D.I. 1; D.I. 8.)

## V. CONCLUSION

Because the court concludes that the Bankruptcy Court's order is interlocutory and that Hybrid has not demonstrated that any of the factors governing whether the court should grant leave for interlocutory appeal under 28 U.S.C. § 158(a)(3) weigh in favor of granting leave here, the court will deny Hybrid's Emergency Motion for Leave to Appeal Decision Limiting Credit Bid.

Dated: February 7, 2014

CHIEF, UNITED STATES DISTRICT COURT

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| FISKER AUTOMOTIVE HOLDINGS, ) | |
| INC., et al., ) | C.A. NO. 13-13087-KG |
| ) | |
| Debtors ) | (Jointly Administered) |
| ) | |
| ) | |
| HYBRID TECH HOLDINGS, LLC, ) | |
| ) | |
| Appellant, ) | |
| ) | C.A. NO. 14-CV-99 (GMS) |
| v. ) | |
| ) | |
| THE OFFICIAL COMMITTEE OF ) | |
| UNSECURED CREDITORS OF FISKER ) | |
| AUTOMOTIVE HOLDINGS, INC. AND ) | |
| FISKER AUTOMOTIVE, INC., ) | |
| ) | |
| Appellee. ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that Hybrid Tech Holdings, LLC's Emergency Motion for Leave to Appeal Decision Limiting Credit Bid is DENIED.

Dated: February 7, 2014

CHIEF, UNITED STATES DISTRICT COURT